[Cite as *State ex rel. Montanez v. ABM Janitorial Servs., Inc.*, 2013-Ohio-4333.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel. Edgard Montanez, | : | |
| Relator, | : | |
| v. | : | No. 12AP-364 |
| ABM Janitorial Services, Inc. and The Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

D E C I S I O N

Rendered on September 30, 2013

---

*Shapiro, Marnecheck, Reimer & Palnik*, **and** *Matthew Palnik*, **for relator.**

*Willacy, Lopresti & Marcovy*, **and** *Thomas P. Marotta*, **for respondent ABM Janitorial Midwest, Inc.**

*Michael DeWine*, Attorney General, and *Cheryl J. Nester*, for respondent Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, P.J.

{¶ 1} Relator, Edgard Montanez, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its May 24, 2011 order to the extent that it retroactively terminates temporary total disability ("TTD") compensation, declares an overpayment, and orders recoupment

of the compensation from February 3 to September 3, 2010. Relator also seeks to compel the commission to enter an amended order reinstating TTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. Although the magistrate made extensive factual findings, we briefly summarize the key facts so that the legal issues presented can be more easily understood.

## Facts and Procedural History

{¶ 3} Relator injured his shoulder in June 2006 while working for respondent, ABM Janitorial Services, Inc. ("ABM"). His claim was allowed for "sprain right shoulder/arm; tear right rotator cuff." Relator was also employed by Almost*family* ("AF"), a home health care agency, in June 2006. Relator's employment with ABM terminated for reasons unrelated to his injury on August 30, 2006. However, relator continued to work for AF.

{¶ 4} In October 2009, AF terminated relator's employment due to relator's conviction of two disqualifying offenses. Approximately four months later, relator underwent arthroscopic surgery for the repair of his right rotator cuff tear. Thereafter, relator moved for TTD compensation and ABM initially agreed to the payment of TTD.

{¶ 5} However, on June 9, 2010, ABM moved for termination of relator's TTD based upon a Medco-14 form filed by relator's surgeon indicating that relator could return to work with restrictions. ABM later amended its motion to include voluntary abandonment of his job with AF as a basis to terminate TTD. Following a hearing, the district hearing officer ("DHO"), issued an order finding that relator had voluntarily abandoned his employment with AF and declared an overpayment of TTD compensation since February 3, 2o10, and denied further TTD. Relator appealed that decision.

{¶ 6} Following a December 14, 2010 hearing, a staff hearing officer ("SHO") vacated the DHO's order for reasons not relevant here, but nevertheless found that TTD terminated as of the date of the hearing on the basis that relator voluntarily abandoned his position of employment with AF. The SHO also determined that it lacked jurisdiction to adjudicate the request for overpayment of TTD for the period February 3, 2010 through December 14, 2010. ABM appealed that decision to the three-member commission.

{¶ 7}   The commission retroactively terminated TTD compensation, declared an overpayment from February 3 to September 3, 2010, and ordered recoupment.  The commission based its decision on its finding that relator voluntarily abandoned his employment with AF when he was discharged by AF for disqualifying conduct and did not obtain subsequent employment.   Relator then commenced this action in mandamus contending that the commission abused its discretion.

{¶ 8}   The magistrate found that the commission did not abuse its discretion by allowing ABM to amend its June 9, 2010 motion to raise the issue of voluntary abandonment, but that it did abuse its discretion in finding relator ineligible for TTD compensation based upon his voluntary abandonment of his employment with AF.  Therefore, the magistrate has recommended that we grant relator's request for a writ of mandamus.

## Commission's Objections

{¶ 9}   The commission has filed objections to the magistrate's decision.  In its first objection, the commission contends that the magistrate erred in finding the commission abused its discretion when it found that relator's voluntary abandonment of his employment with AF disqualified him from receiving TTD compensation for the period following his right shoulder surgery in connection with his allowed claim with his former employer ABM.  We disagree.

{¶ 10} This court recently addressed the issue raised in the commission's first objection in *State ex rel. Cline v. Abke Trucking, Inc.*, 10th Dist. No. 10AP-888, 2012-Ohio-1914 and *State ex rel. MedAmerica Health Sys., Corp. v. Brammer*, 10th Dist. No. 11AP-904, 2012-Ohio-4416.   We held in both of these cases that "a voluntary abandonment of subsequent employment does not relate back and transform an involuntary departure from the original employer into a voluntary departure so as to render the employee ineligible for TTD compensation."  *MedAmerica* at ¶ 5-7; *Cline* at ¶ 14-15.

{¶ 11} The commission attempts to distinguish both *Cline* and *MedAmerica* on the ground that they involved successive employment, not concurrent employment as presented here.  We do not find this difference significant.  Although it is true that relator worked concurrently for ABM and AF at one time, AF became the successive employer

when relator left his employment with ABM. As both *Cline* and *MedAmerica* indicate, relator's voluntary abandonment of his job with AF did not transform his involuntary departure from ABM into a voluntary abandonment of that job. In addition, we are not persuaded by the commission's argument that the issue presented here is analogous to the calculation of average weekly wage when there is concurrent employment. The calculation of average weekly wage when there is concurrent employment sheds no light on whether the voluntary abandonment of a job with a subsequent employer disqualifies a claimant from receiving TTD for an allowed claim with an earlier employer. Based upon *Cline* and *MedAmerica*, we overrule the commission's first objection.

{¶ 12} In its second objection, the commission contends that the magistrate erred in holding that the commission abused its discretion when it terminated TTD and declared an overpayment. Citing *State ex rel. Eckerly v. Indus. Comm.*, 105 Ohio St.3d 428, 2005-Ohio-2587, ¶ 9, the commission argues that to be eligible for TTD, "the industrial injury *must remove the claimant from his or her job*. This requirement obviously cannot be satisfied if claimant had no job *at the time of the alleged disability.*" (Emphasis sic.) Therefore, the commission argues that relator was ineligible for TTD because he was not employed when he had surgery on February 3, 2010. Again, we disagree.

{¶ 13} This court held in *MedAmerica* and *Cline* that the language from *Eckerly* quoted by the commission refers to a claimant's complete abandonment of the workforce, not just unemployment at the time of the alleged disability. Therefore, *Eckerly* does not support the commission's objection. Nor did ABM argue that relator voluntarily abandoned the workforce after his employment with AF was terminated. For these reasons, we overrule the commission's second objection.

{¶ 14} In its third objection, the commission contends that even if it incorrectly found relator ineligible for TTD, the magistrate erred by granting a full writ rather than a limited writ. The commission argues that it should be allowed to determine the issue of TTD in light of *Cline* and *MedAmerica*, which were issued after the commission's denial of TTD in this case. Because the application of *Cline* and *MedAmerica* is determinative of relator's eligibility for TTD, there is no reason to remand this matter to the commission. Therefore, we overrule the commission's third objection.

**ABM's Objections**

{¶ 15} ABM has also filed objections to the magistrate's decision.  In its first objection, ABM contends that *Cline* and *MedAmerica* are factually distinguishable and are not dispositive of the issue of relator's eligibility for TTD compensation.  We disagree.

{¶ 16} ABM's argument confuses the concepts of abandonment of a job with the abandonment of the workforce.  Here, there has been no finding that relator voluntarily abandoned his job with ABM.  In fact, ABM did not initially contest relator's eligibility for TTD, suggesting that ABM conceded that relator's separation from ABM was not voluntary.  Even when ABM subsequently contested relator's eligibility for TTD, it did not do so on the basis that relator's separation from ABM was due to his voluntary abandonment of his job.  Instead, ABM based its argument solely on the fact that relator voluntarily abandoned his job with AF.  As we held in *Cline* and *MedAmerica*, "a voluntary abandonment of subsequent employment does not relate back and transform an involuntary departure from the original employer into a voluntary departure so as to render the employee ineligible for TTD compensation."  *MedAmerica* at ¶ 5.  Although relator was ineligible for TTD during the period he was employed by AF, his voluntary abandonment of his job with AF did not affect his eligibility for TTD based upon an allowed claim with ABM.  *Cline*; *MedAmerica*.

{¶ 17} Although ABM also argues that relator was ineligible for TTD at the time he applied because he was not employed, ABM concedes that relator never left the workforce.  Because relator never left the workforce, he remained eligible for TTD compensation based upon his allowed claim with ABM, even though he was unemployed at the time he sought the compensation.

{¶ 18} For these reasons, we overrule ABM's first objection.

{¶ 19} In its second objection, ABM contends the magistrate erred by raising the nature of relator's separation from ABM in his decision because relator did not raise this issue.  ABM's argument reflects a fundamental misunderstanding of the magistrate's analysis.

{¶ 20} The magistrate simply noted that ABM never asserted that relator voluntarily abandoned his job with ABM.  Therefore, there was no reason for the

magistrate to consider in his legal analysis the possibility that relator had voluntarily abandoned his job with ABM. Nor was there any reason for the relator to raise this non-issue. In the absence of an argument supported by record evidence that relator voluntarily abandoned his job with ABM, the magistrate correctly characterized the relator's separation from ABM as involuntary. Therefore, we overrule ABM's second objection.

{¶ 21} In its third and final objection, ABM contends that the magistrate erred by not recommending a limited writ to allow the commission to address the nature of relator's termination from ABM. We disagree.

{¶ 22} When relator first applied for TTD compensation, ABM did not contest relator's eligibility even though it was aware of the circumstances surrounding relator's loss of employment with ABM. As previously noted, ABM never asserted that relator's separation from his employment with ABM was voluntary. Because ABM never contested relator's eligibility for TTD based upon the nature of his separation with ABM, we overrule relator's third objection.

{¶ 23} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus granted.*

TYACK and DORRIAN, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel. Edgard Montanez, | : | |
| Relator, | : | |
| v. | : | No. 12AP-364 |
| ABM Janitorial Services, Inc. and The Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

MAGISTRATE'S DECISION

Rendered on February 25, 2013

*Shapiro, Marnecheck, Reimer & Palnik*, **and** *Matthew Palnik*, **for relator.**

*Willacy, Lopresti & Marcovy*, **and** *Thomas P. Marotta*, **for respondent ABM Janitorial Midwest, Inc.**

*Michael DeWine*, **Attorney General, and** *Eric Tarbox*, **for respondent Industrial Commission of Ohio.**

IN MANDAMUS

{¶ 24} In this original action, relator, Edgard Montanez, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its May 24, 2011 order to the extent that, on eligibility grounds, it retroactively terminates temporary total disability ("TTD") compensation and declares an overpayment and orders

recoupment of the compensation from February 3 to September 3, 2010, and to enter an amended order reinstating TTD compensation.

Findings of Fact:

{¶ 25} 1. On June 16, 2006, relator injured his right shoulder and arm while employed as a maintenance worker for respondent ABM Janitorial Services, Inc. ("ABM"), a self-insured employer under Ohio's workers' compensation laws.

{¶ 26} 2. The industrial claim (No. 06-859413) is allowed for "sprain right shoulder/arm; tear right rotator cuff."

{¶ 27} 3. As early as 2004, relator was also employed by Almost*family*, a home health care agency. Annually, Almost*family* required its employees, including relator, to sign a one-page form captioned "Criminal Offense Statement." On April 1, 2009, as in earlier years, relator signed the form which states:

> You may not begin employment until you have signed and submitted this statement.
>
> You will be fingerprinted for a Bureau of Criminal Investigation and Identification records check.
>
> I (Printed Name) _____, hereby declare that I have never been convicted of or pleaded guilty to any of the criminal offenses listed on the back [of] this form. I agree to inform the Administrator or Human Resource Coordinator in writing if, while employed by Almost*family*, I am ever formally charged with, convicted of or plead guilty to any of the offenses listed on the back of this form. Such notification must be within 14 calendar days of the charge, conviction, or guilty pleas. I understand that failure to notify the Administrator or Human Resources Coordinator may result in me being dismissed from Almost*family* may result in me being dismissed from Almost*family* employment. [Sic.]

{¶ 28} 4. The back of the form lists "Designated Offenses that Disqualify Employment of a Person in a Position that is Responsible for the Care, Custody, or control of a Child." The back of the form also lists "Designated Offenses that Disqualify Employment of a person in a position that is Responsible for the Direct Care of an Older Adult." Under each category, the form lists R.C. 2907.09, public indecency as a disqualifying offense.

{¶ 29} 5. For reasons that are unclear, in August 2006, ABM terminated relator's employment.  However, relator continued his employment with Almost*family*.

{¶ 30} 6. On August 31, 2009, in the Parma Municipal Court, relator was convicted of the offenses of public indecency and disorderly conduct.  Relator was fined and placed on probation.  The offenses were committed on April 24, 2009.

{¶ 31} 7. By letter dated October 22, 2009, Almost*family* informed relator of his termination:

> This letter is a follow up to our conversation on 10/21/2009.
>
> Your fingerprints confirmed that you were convicted of a disqualifying offense twice this year. According to Almost Family policy, this is grounds for immediate termination. This termination was effective as of October 21, 2009.

{¶ 32} 8. On February 3, 2010, relator underwent arthroscopic shoulder surgery for the repair of his right rotator cuff tear.  The surgery was performed by Kim L. Stearns, M.D.

{¶ 33} 9. On March 1, 2010, physician of record Cyril E. Marshall, M.D., certified a period of TTD beginning February 3, 2010 to an estimated return-to-work date of May 3, 2010.  The certification was based upon the shoulder surgery.

{¶ 34} 10. On the March 1, 2010 C-84, relator indicated by his mark that he had been receiving unemployment compensation from October 2009 to "[p]resent."

{¶ 35} 11. On March 8, 2010, relator moved for TTD compensation.  In support, relator submitted the March 1, 2010 C-84 from Dr. Marshall.

{¶ 36} 12. By letter dated March 17, 2010, ABM's third-party administrator informed the Ohio Bureau of Workers' Compensation ("bureau"):

> [T]he **employer agrees with the motion** filed 3/8/10 by claimant's attorney requesting payment of Temporary Total Disability from 2/3/10 to current and continuing based on medical records. As the employer agrees with the Motion, **there is no need to refer for hearing**.

(Emphasis sic.)

{¶ 37} 13. On May 27, 2010, Dr. Stearns completed a form captioned "Physician's Report of Work Ability" ("Medco-14").

{¶ 38} 14. On June 9, 2010, ABM moved for termination of TTD compensation based upon Dr. Stearns' Medco-14. ABM stated in its motion:

> Employer requests Temporary Total Disability benefits be terminated based upon the MEDCO-14 from claimant's surgeon, Dr. Stearns. Per Dr. Stearns, claimant is able to return to work with restrictions at this time, thereby making claimant ineligible for payment of Temporary Total Disability per Ohio BWC rules & guidelines.

{¶ 39} 15. On July 15, 2010, ABM's June 9, 2010 motion was heard by a district hearing officer ("DHO"). Following the hearing, the DHO issued an "interlocutory continuance order" stating:

> This hearing is continued in order to adjudicate issues that arose from this hearing on the Employer's Motion regarding the issue of temporary total compensation. Reset on the Employer's Motion along with the issues of Abandonment and Overpayment. Please allow for a one hour docket slot and interpreter for the Injured Worker.
>
> The continuance is agreed to by the parties and does not violate the time constraints set forth in R.C. 4123.511.

{¶ 40} 16. Following a September 7, 2010 hearing, the DHO issued an order finding that relator had voluntarily abandoned his employment with Almost*family*, and declaring an overpayment of TTD compensation paid since February 3, 2010. The DHO's order explains:

> It is the order of the District Hearing Officer that the C-86 Motion filed by Employer on 06/09/2010 is granted to the extent of this order.
>
> The Hearing Officer notes that this hearing was previously set on 07/15/2010 on the Employer's Motion to Terminate Temporary Total Compensation. During that hearing and through questioning of the Injured Worker, the question of abandonment became apparent as the Injured Worker testified that he lost his job due to some reason non-injury related. After further questioning of the Injured Worker and counsel for both parties searching the internet during the hearing, some criminal activity was revealed. At that time, the Employer's counsel requested termination of temporary total compensation based upon the defense of abandonment and that an overpayment be declared for the temporary total

compensation that the Self-Insuring Employer unilaterally began paying on 02/03/2010 as the result of a surgery. The Injured Worker's counsel objected to proceeding on the Employer's counsel's request based on lack of notice. Despite the fact that abandonment can be raised at anytime at a hearing in which temporary total compensation is at issue, due to the possible overpayment issue, the Hearing Officer reset the hearing on the issue of Overpayment and Abandonment in order that all parties were on notice as to the issues involved in the ongoing temporary total and so that both parties could obtain further documentation if deemed appropriate.

At the present hearing, Injured Worker's counsel argued that the Industrial Commission lacked continuing jurisdiction as the Self-Insuring Employer did not file a written motion and that District Hearing Officer's do not have jurisdiction over continuing jurisdiction issues. The Hearing Officer finds that the defense of abandonment does not require specific notice. Further, the Self-Insuring Employer orally amended the Motion to terminate temporary total compensation to include abandonment and overpayment at the 07/15/2010 hearing. The Hearing Officer had the Employer's counsel write what was reflected at that hearing on a copy of the original motion in order to satisfy the Injured Worker's counsel that there was nothing in writing, despite the fact that was the purpose of the reset hearing. All parties were on notice 07/15/2010 as to the issues at hand. The hearing notice further put the parties on notice. The Hearing Officer finds that the Injured Worker and his counsel were afforded due process as they were informed on more than one occasion what the content of the next hearing would entail. Further, since there is no formal order ordering the Self-Insuring Employer to pay temporary total compensation, to entertain the proper payment of temporary total compensation does not fall under a continuing jurisdiction issue in the sense that the Injured Worker's counsel has portrayed. The Employer's counsel has properly raised the defense on the proper payment of temporary total compensation and the ongoing payment of temporary total compensation.

The Hearing Officer finds that the Injured Worker abandoned his employment due to his voluntary act of criminal activity. As the result of this activity, the Injured Worker was terminated from his employment at Almost Family in October 2009. The Injured Worker's termination

was in response to a written work policy in which failure to report conviction of certain offenses may lead to termination. The Injured Worker was aware of this policy and signed annual Criminal Offense Statements which indicated that if he was ever charged, convicted or plead guilty to any number of charges he is required to notify the Employer within 14 days. Failure to do so may result in termination.

The Injured Worker failed to notify his Employer of the two convictions in 2009. Thus, when the Employer found out about them through the annual background check, the Injured Worker was terminated from his employment from Almost Family. The Hearing Officer finds that this is a voluntary act that led to the termination of the Injured Worker. The Injured Worker never returned to the work force after his termination in October 2009 and before his surgery in February 2010. Therefore, the Injured Worker is not entitled to receive temporary total compensation in this claim at this time. As a result, the Hearing Officer finds that the temporary total compensation paid beginning 02/03/2010, through the present, is declared overpaid as it was improperly paid. The Self-Insuring Employer relied upon the credibility of the Injured Worker that he was legally entitled to receive compensation in this claim when it unilaterally began paying compensation as the result of his surgery.

Despite the ineligibility of temporary total, the Hearing Officer also finds that the Injured Worker has reached maximum medical improvement for the allowed conditions of this claim. Therefore, temporary total compensation is terminated as of today's hearing of 09/07/2010 based upon the 08/25/2010 report of Dr. Ghanma dated 08/25/2010.

{¶ 41} 17. By letter dated September 7, 2010 to the commission, relator's counsel declared:

I believe it is necessary to document what transpired today at Mr. Montanez's hearing as Mr. Montanez could not afford to have a court reporter present.

The origins of today's hearing stem from Mr. Montanez's receipt of temporary total disability (TTD) which began after his February 3, 2010 surgery. The self-insured employer (ABM) had been paying temporary total disability as it had accepted Mr. Montanez's March 8, 2010 motion and, per its March 17, 2010 correspondence. On June 9, 2010, however,

ABM filed a motion requesting that the Industrial Commission find Mr. Montanez maximum medically improved (MMI). This motion was original [sic] heard on July 15, 2010 when DHO Augusta raised the issue of voluntary abandonment after she learned that Mr. Montanez was receiving unemployment compensation, as indicated on the C-84's filed along with his March 8, 2010 motion requesting TTD, prior to his receipt of TTD. At said hearing the undersigned argued that the commission was without jurisdiction to hear any issue other than that raised by the employer's motion, i.e. MMI. The hearing officer then concluded the hearing without providing any guidance as to the outcome of said hearing and weeks later issued an interlocutory continuance order unilaterally continuing the hearing in addition to unilaterally adding issues to be heard at the rescheduled hearing other than those raised by ABM in its Jun[e] 9, 2010 motion.

At today's rescheduled MMI hearing, the undersigned once again argued that the Industrial Commission was without jurisdiction to hear new issues raised by the DHO as the employer had not filed a request for the Industrial Commission to exercise continuing jurisdiction, per R.C. 4123.52, to revisit the previously adjudicated issue of Mr. Montanez's entitlement to TTD. In response to this argument, the hearing officer stated that the employer had filed a written motion. I disagreed. In response, the hearing officer stated that the previous motion was amended orally at the last hearing which was why said hearing was reset. I disagreed. In response, the hearing officer printed off a paper, handed it [to] the employer's attorney and had them write down the motion it wanted heard. The employer's attorney then wrote something down and handed it back to the hearing officer. I was not shown what the employer's attorney wrote nor was I given a copy.

Despite there being no jurisdiction to do so, I was forced to proceed on the merits of the case regarding the Industrial Commission's own motion regarding Mr. Montanez's alleged voluntary abandonment, but do not feel that Mr. Montanez was afforded a fair hearing.

What I argued at both hearings and what I believe needs to happen for the Industrial Commission to have jurisdiction over the issue of voluntary abandonment is that the self-insured employer must file a formal written motion requesting that the Commission exercise continuing

jurisdiction pursuant to R.C. 4123.52. This motion must be fully adjudicated and if the Commission finds that the employer can meet the requirements of R.C. 4123.52 and that continuing jurisdiction is appropriate, the issue of Mr. Montanez's entitlement to TTD can be revisited. This, however, was not done. At no time during the hearing did the employer's attorney or the hearing officer address any of the requirements necessary for the Industrial Commission to exercise continuing jurisdiction.

Mr. Montanez was not afforded due process under the law and I cannot sit by and watch what occurred without documenting what transpired.

{¶ 42} 18. By letter dated September 22, 2010, ABM's counsel responded to the September 7, 2010 letter of relator's counsel:

I would like to provide you with my recollection of the events, as they differ from Mr. Palnik's in several respects.

The employer's original motion to terminate temporary total disability benefits was based upon the records of Dr. Stearns, claimant's surgeon, who opined that he could return to work. However, at the District Hearing Officer hearing on July 15, 2010, the plaintiff testified, on cross examination, that he was terminated from his employment at Almost Family (a home health care service company) in October 2009. This was several months before the commencement of his most recent period of temporary total disability benefits which began on February 3, 2010, following surgery. I questioned Mr. Montanez about the reason for his termination, but he refused to answer, stating only that I should speak to his lawyer, which I took to mean his criminal lawyer. A quick check of the Cleveland Municipal Court online docket revealed that Mr. Montanez had been convicted of "indecent exposure" in March of 2009.

Thereafter, I orally moved that the employer's motion be amended to include the defense of voluntary abandonment of employment and requested that an overpayment be declared. Mr. Palnik then argued that the District Hearing Officer did not have the jurisdiction to hear this new issue and declined to waive notice. Ms. Augusta granted my motion, adjourned the hearing and subsequently the matter was re-set for hearing on the additional issues of voluntary abandonment and overpayment.

At the September 7th hearing, Mr. Palnik again objected to jurisdiction. Ms. Augusta recounted the events at the previous hearing, including my oral motion, and, so the record would be clear, requested that I memorialize my previous oral motion, in writing, on a copy of the employer's original C-86 motion. The District Hearing Officer then indicated that she had jurisdiction to hear the merits of the employer's motion and Mr. Palnik proceeded.

In short, all parties were on notice of the issues to be addressed at the September 7th, 2010 hearing. Further, I believe that District Hearing Officer Augusta is correct in asserting that there is no issue of continuing jurisdiction. Finally, I do not believe that Mr. Montanez was denied due process as all parties were aware of the issues to be heard. In the period between the two hearings, I requested and received an administrative subpoena for the claimant's employment records from Almost Family, which revealed the reason for his discharge: He had two criminal convictions which were discovered during an annual records check and failed to report these convictions, contrary to company policy.

{¶ 43} 19. Relator administratively appealed the DHO's order of September 7, 2010.

{¶ 44} 20. Following a December 14, 2010 hearing, a staff hearing officer ("SHO") mailed an order on December 30, 2010 that vacates the DHO's order of September 7, 2010. The SHO's order explains:

It is the order of the Staff Hearing Officer that the C-86, filed 06/09/2010, is granted to the extent of this order.

On 06/09/2010 the Self-Insuring Employer filed a motion requesting that the payment of temporary total be terminated. The reason given was that the Injured Worker was able to return to work with restrictions. The Staff Hearing Officer now denies this request. The fact that an Injured Worker is able to return to some form of employment is not a basis to terminate the payment of temporary total. There is no evidence that the Self-Insuring Employer has made an offer of employment to the Injured Worker that is consistent with the work restrictions set forth by his treating physicians. The claim was set for hearing on the motion on 07/15/2010. The Injured Worker was present for the hearing and testified. He indicated that after being

terminated by the Self-Insuring Employer he had been hired by a company called Almost Family. He stated that he no longer was employed by Almost Family and had not been since October, 2009. After further questioning the Employer's Representative orally amended the C-86. The Self-Insuring Employer now wanted temporary total denied on the basis that the Injured Worker had voluntarily abandoned his employment with Almost Family and requested an overpayment of all temporary total paid beginning 02/03/2010. The Injured Worker's Representative refused to waive notice of hearing and the District Hearing Officer ordered the matter reset.

The matter was set for hearing again on 09/07/2010. At that time the notice of hearing contained the issues "job abandonment" and "overpayment". At the hearing the Injured Worker's Representative objected to going forward on the amended motion as it had not been reduced to writing. He also argued that the new issues raised by the Employer should be the subject of a motion pursuant to R.C. 4123.52. The parties agree that the Employer's Representative did write a brief addendum to the C-86 on a copy of the motion that the District Hearing Officer had printed. There, however, is no written copy of the amended motion in the file. The Staff Hearing Officer cannot explain this, but the parties are in agreement as to the issues raised by the Employer. The Staff Hearing Officer finds that the Employer did have the right, as any party does, to amend its motion upon the receipt of new information. The District Hearing Officer correctly reset the matter when the Injured Worker's Representative refused to waive notice of hearing as he had every right to do. Ideally the amended motion should have been reduced to writing immediately.

The Staff Hearing Officer vacates the finding of the District Hearing Officer that the Injured Worker has reached maximum medical improvement. There has been no request by the Employer for termination of temporary total on this basis. Although the Employer's Representative refers to such in his 09/22/2010 letter there is no motion that requests a finding of maximum medical improvement. The Staff Hearing Officer does find that the payment of temporary total disability compensation is to terminate as of 12/14/2010 on the basis that the Injured Worker voluntarily abandoned his former position of employment with Almost Family. The Injured Worker was terminated due to two criminal convictions for public indecency. When the Injured

Worker was hired he was put on notice that a conviction of this type could result in his termination. The Employer's Representative submitted a copy of the warning signed by the Injured Worker. This type of conviction is clearly listed among the potential dischargeable offenses. The Staff Hearing Officer finds that she does not have jurisdiction to adjudicate the issue of the request for overpayment of temporary total for the period of 02/03/2010 through 12/14/2010. Based on the holding of State ex rel. Baker v. Industrial Commission of Ohio 89 Ohio St. 3d 376 (2000), the Staff Hearing Officer finds that the Employer must file a motion pursuant to [R.C.] 4123.52 as this temporary total was paid by the Employer voluntarily and not pursuant to an order of the Industrial Commission.

{¶ 45} 21. ABM administratively appealed the SHO's order of December 14, 2010.

{¶ 46} 22. On February 2, 2011, the commission mailed a "Notice of Acceptance of Appeal for Hearing." The notice states:

By unanimous determination the Employer's appeal filed on 01/18/2011, from the Staff Hearing Officer order issued 12/30/2010, has been accepted for hearing to be scheduled before a Deputy of the Commission. The parties will be properly notified of the time and place of hearing in compliance with the requirement contained in R.C. 4123.511.

{¶ 47} 23. On April 13, 2011, the three-member commission, on a two-to-one vote, mailed an order stating:

On 02/16/2011 a hearing was held before a Deputy of the Industrial Commission pursuant to the provisions of R.C. 4121.03 and 4123.511 on the Employer's appeal, filed 01/18/2011, from the Staff Hearing Officer order issued 12/30/2010.

Thereafter, the matter was presented to the members of the Industrial Commission. After review and discussion, it is the order of the Commission that the Employer's appeal, filed 01/18/2011, be set for hearing before the members of the Industrial Commission.

{¶ 48} 24. Following a May 24, 2011 hearing, the three-member commission, on a two-to-one vote, mailed an order that vacates the SHO's order of December 14, 2010 (mailed December 30, 2010). Based upon a finding that relator had voluntarily abandoned his employment with Almost*family*, the commission retroactively terminated

TTD compensation, declared an overpayment from February 3 to September 3, 2010, and

ordered recoupment. The commission's order of May 24, 2011 explains:

> Preliminarily, the Commission rejects the Injured Worker's request that the Employer's appeal be dismissed. Relying upon Commission Resolution R07-1-04(C), the Injured Worker argues the Self-Insuring Employer's failure to pay temporary total disability compensation beyond 09/03/2010 violates the order of the Staff Hearing Officer, issued 12/30/2010. The Commission finds, however, that the Staff Hearing Officer failed to clearly order payment of temporary total disability compensation. The order establishes a termination date but does not specifically award temporary total disability. This decision is supported by the 03/17/2011 correspondence from the Bureau of Workers' Compensation Self-Insured Department, which found the Injured Worker's self-insured complaint on this topic invalid.
>
> * * *
>
> It is the further order of the Commission that the Employer's C-86 motion filed 06/09/2010, requesting termination of temporary total disability compensation is granted. The Commission finds the Injured Worker voluntarily abandoned his employment when he was discharged on 10/22/2009 and did not obtain subsequent employment, barring the Injured Worker from receiving temporary total disability compensation from 02/03/2010 to the date last paid, 09/03/2010. Temporary total disability compensation paid from 02/03/2010 to 09/03/2010 is declared overpaid and ordered recouped consistent with R.C. 4123.511(K).
>
> On 04/01/2009, the Injured Worker signed a Criminal Offense Statement whereby the Injured Worker agreed to notify his employer, Almost Family, of any charges or convictions of specified offenses. This statement clearly identified that a failure to notify Almost Family would result in dismissal. On 10/22/2009, Almost Family terminated the Injured Worker's employment upon its discovery that the Injured Worker had been convicted of two disqualifying offenses and failed to report both.
>
> The Commission finds the Injured Worker's termination on 10/22/2009 was a voluntary abandonment of his employment under the holding of State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, thereby precluding the payment of temporary total disability

compensation. The Court in <u>Louisiana-Pacific</u> found that a discharge was voluntary, when termination resulted from a violation of a written work rule or policy that: (1) clearly defined the prohibited conduct; (2) had been previously identified by the Employer as a dischargeable offense; and (3) was known or should have been known to the employee. The Commission finds the Criminal Offense Statement clearly defined the prohibited conduct and advised that discharge would result therefrom. The Commission further finds the Injured Worker was aware of this written policy as verified by his signature of 04/01/2009.

{¶ 49} 25. On April 23, 2012, relator, Edgard Montanez, filed this mandamus action.

<u>Conclusions of Law</u>:

{¶ 50} Did the commission abuse its discretion: (1) by allowing ABM to amend its June 9, 2010 motion to terminate TTD compensation, and (2) by finding relator ineligible for TTD compensation?

{¶ 51} The magistrate finds that the commission did not abuse its discretion by allowing ABM to amend its June 9, 2010 motion, but it did abuse its discretion in finding relator ineligible for TTD compensation.

{¶ 52} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

<b>The First Issue</b>

{¶ 53} The first issue seemingly involves a factual dispute between relator and ABM as to what actually transpired at the July 15, 2010 hearing. It also involves relator's challenge to the original jurisdiction of the DHO who heard the voluntary abandonment issue on September 7, 2010 following the resetting of ABM's June 9, 2010 written motion to terminate TTD compensation.

{¶ 54} The DHO who heard ABM's June 9, 2010 motion states in his September 7, 2010 order that ABM "orally amended the Motion to terminate temporary total compensation to include abandonment and overpayment at the 07/15/2010 hearing." The DHO further states that she had ABM's counsel "write what was reflected at that hearing on a copy of the original motion in order to satisfy the Injured Worker's counsel that there was nothing in writing."

{¶ 55} Here, relator captions his argument as follows:

> The Commission abused its discretion and violated Relator's due process rights by transforming, at its own initiative, the employer's motion to have Relator found maximally medically improved into a motion to terminate temporary total disability based upon voluntary abandonment.

(Relator's brief, at 9.)

{¶ 56} It is not clear whether relator is actually challenging the accuracy of the DHO's order indicating that ABM orally amended its motion to include abandonment and overpayment. Because the hearing was not recorded, we do not have a hearing transcript that might be used to test the accuracy of the DHO's statement.

{¶ 57} By declaring that "at its own initiative," the commission "transformed" ABM's June 9, 2010 written motion seems to suggest a claim from relator that the DHO may have invited ABM's oral motion to amend—not that ABM actually failed to orally amend.

{¶ 58} Even if the DHO invited ABM's oral motion to amend its June 9, 2010 written motion, it was ABM, nonetheless, that orally moved to amend its written motion as the DHO indicates in her order.

{¶ 59} Relator cites to no authority holding that a hearing officer abuses his or her discretion by inviting a party to orally move to amend a previously filed written motion. Relator cites to no authority to support his suggestion that such invitation renders the hearing officer or commission unable to impartially hear the matter before it.

{¶ 60} R.C. 4121.34(B) provides:

> District hearing officers shall have original jurisdiction on all of the following matters:
>
> * * *
>
> (3) All other contested claims matters under this Chapter 4123., 4127., and 4131. of the Revised Code, except those matters over which staff hearing officers have original jurisdiction.

{¶ 61} According to relator, the voluntary abandonment issue was not a contested issue because ABM did not raise the issue in its June 9, 2010 written motion. Thus,

relator concludes that the DHO who heard the matter on September 7, 2010 lacked original jurisdiction over the voluntary abandonment issue. Relator is incorrect.

{¶ 62} The voluntary abandonment issue was contested. Undeniably, ABM contested the issue when it orally moved to amend its June 9, 2010 motion to include the voluntary abandonment issue. The issue cannot be said to be uncontested simply because the hearing officer may have invited ABM to amend its written motion. And, as ABM points out here, it did not become aware of relator's discharge by Almost*family* until the July 15, 2010 hearing, after ABM had filed its motion on June 9, 2010. Thus, the failure to raise the voluntary abandonment issue in its June 9, 2010 motion did not constitute an unwillingness to contest the job departure.

### The Second Issue

{¶ 63} The second issue, as earlier noted, is whether the commission abused its discretion in finding that relator voluntarily abandoned his employment at Almost*family*.

{¶ 64} Historically, this court first held that, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued TTD benefits since it is his own action, rather than the industrial injury, which prevents his returning to his former position of employment. *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.*, 29 Ohio App.3d 145 (10th Dist.1985). The *Jones & Laughlin* rationale was adopted by the Supreme Court of Ohio in *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42 (1987), wherein the court recognized a "two-part test" to determine whether an injury qualified for TTD compensation. *Ashcraft* at 44. The first part of the test focuses upon the disabling aspects of the injury whereas the latter part determines if there are any other factors, other than the injury, which prevent the claimant from returning to his former position of employment. *Id.*

{¶ 65} In *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44 (1988), the court held that an injury-induced abandonment of the former position of employment, as in taking a retirement, is not considered to be voluntary.

{¶ 66} In *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401, 403 (1995), the claimant was fired for violating the employer's policy prohibiting three

consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating:

> [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been know to the employee. Defining such an employment separation as voluntary comports with Ashcraft and [*State ex rel. Watts v. Schottenstein Stores Corp.*, 68 Ohio St.3d 118 (1993)]—*i.e.*, that an employee must be presumed to intend the consequences of his or her voluntary acts.

{¶ 67} In *State ex rel. McKnabb v. Indus. Comm.*, 92 Ohio St.3d 559, 561 (2001), the Supreme Court of Ohio held that the rule or policy supporting an employer's voluntary abandonment claim must be written. The court explained:

> Now at issue is Louisiana-Pacific's reference to a written rule or policy. Claimant considers a written policy to be an absolute prerequisite to precluding TTC. The commission disagrees, characterizing Louisiana-Pacific's language as merely illustrative of a TTC-preclusive firing. We favor claimant's position.
>
> The commission believes that there are common-sense infractions that need not be reduced to writing in order to foreclose TTC if violation triggers termination. This argument, however, contemplates only some of the considerations. Written rules do more than just define prohibited conduct. They set forth a standard of enforcement as well. Verbal rules can be selectively enforced. Written policies help prevent arbitrary sanctions and are particularly important when dealing with employment terminations that may block eligibility for certain benefits.

(Emphasis sic.)

{¶ 68} The syllabus of *State ex rel. McCoy v. Dedicated Transport Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, states:

> A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she

reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.

{¶ 69} The *McCoy* holding was further explained by the court in *State ex rel. Eckerly v. Indus. Comm.*, 105 Ohio St.3d 428, 2005-Ohio-2587. In that case, the claimant, Shawn E. Eckerly, was fired from his job for unexcused absenteeism. Thereafter, the commission declared that the discharge constituted a voluntary abandonment of his employment under *Louisiana-Pacific*, and denied TTD compensation. Citing *McCoy*, the *Eckerly* court upheld the commission's denial of TTD compensation. The *Eckerly* court explains:

> The present claimant seemingly misunderstands *McCoy*. He appears to believe that so long as he establishes that he obtained another job-if even for a day-at some point after his departure from Tech II, TTC eligibility is forever after reestablished. Unfortunately, this belief overlooks the tenet that is key to *McCoy* and all other TTC cases before and after: that the industrial injury *must remove the claimant from his or her job*. This requirement obviously cannot be satisfied if claimant had no job *at the time of the alleged disability*.

(Emphasis sic.) *Id.* at ¶ 9.

{¶ 70} In *State ex rel. Cline v. Abke Trucking, Inc.*, 10th Dist. No. 10AP-888, 2012-Ohio-1914, Fred D. Cline sustained an industrial injury while employed as a truck driver for Abke Trucking, Inc. Following a medical release to return to work, Cline underwent a medical examination to renew his commercial driver's license. Thereafter, Abke informed Cline that he was terminated from his employment because he was disqualified by his diabetic condition from operating as a commercial driver and because Abke believed he had falsified his employment time sheets.

{¶ 71} Cline obtained other part-time employment the following month, followed by a full-time job as a truck driver with another company. After approximately one month of employment with the new company, Hoekstra Transportation LLC, Cline was fired, apparently for insubordination and poor job performance.

{¶ 72} After the commission found him ineligible for TTD compensation, Cline filed a mandamus action in this court. This court held that Cline had not voluntarily

abandoned his employment with Abke. Then, this court addressed issues relating to Cline's employment with Hoekstra:

> Finally, the commission in the alternative argues that if relator's discharge from Abke does not disqualify him from TTD compensation, then relator's subsequent discharge by another employer (Hoekstra) constitutes a voluntary abandonment of employment that will relate back to his initial termination by Abke and accordingly render him ineligible for compensation. As a corollary, the commission proposes that lack of employment for any reason at the time a claimant attempts to renew his claim and obtain an additional period of TTD will preclude compensation. We find no support for either legal proposition, both of which amalgamate the distinct concepts of voluntary departure from the employer where the allowed claim arose and voluntary abandonment of the work force entirely.
>
> Aside from a claimant's voluntary departure from employment with an employer against whom the claim for TTD compensation was originally brought, "a claimant's complete abandonment of the entire work force will preclude TTD compensation altogether." *State ex rel. Pierron v. Indus. Comm.*, 172 Ohio App.3d 168, 873 N.E.2d 909, 2007-Ohio-3292, ¶ 12 (10th Dist.), citing *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376, 732 N.E.2d 355 (2000), affirmed 120 Ohio St.3d 40, 896 N.E.2d 140, 2008-Ohio-5245. A defense of voluntary abandonment of the entire work force, however, is distinct from a defense of ineligibility due to voluntary departure from the employment position in which the injury occurred, as is demonstrated by the different standards announced in cases addressing the respective issues, such as *Louisiana–Pacific* and *Baker*. None of the cases addressing complete abandonment of the work force by a claimant do so in terms of treating a voluntary departure from a subsequent employer as a preclusive event of the same order as a voluntary departure from the employer against whom the claim is brought. Likewise, the cases do not treat a subsequent firing for cause as relating back and transforming an involuntary departure from the original employer into a voluntary departure.
>
> We find that in the present case relator has not abandoned the work force, as evidenced by his continued employment in truck driving and nondriving positions after leaving Abke. Unlike the claimant in *Pierron*, who accepted a buyout and made no attempt to return to employment in the ensuing five

years, relator had repeatedly, if unsuccessfully, attempted to remain employed before pursuing renewed TTD. The fact that his termination from his subsequent employment with Hoekstra was potentially for cause, i.e., violation of Hoekstra's work rules, does not demonstrate abandonment of the work force; it would so affect, if such a claim were at issue, any subsequent claim that relator made for injuries sustained during his employment with Hoekstra, but that is not the case before us. Relator has not "evinced an intent to leave the work force." *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 896 N.E.2d 140, 2008-Ohio-5245, ¶ 10. In the necessarily fact-intensive inquiry into whether a claimant has abandoned the work force entirely, we do not conclude that repeated and habitual firings from subsequent employment might be taken into account, but again, that is not the case before us.

In the same vein, the commission further argues that relator's lack of income at the time he renewed his claim for continuing injury of itself precludes allowance of TTD compensation. The commission cites *State ex rel. Eckerly v. Indus. Comm.*, 105 Ohio St.3d 428, 828 N.E.2d 97, 2005-Ohio-2587, for the proposition that no claim can be allowed if the claimant is unemployed at the time of the alleged disability. Read more carefully, however, *Eckerly* is a case that turns on alleged abandonment of the work force, rather than momentary unemployment of the claimant: "[I]t appears that claimant was almost entirely unemployed in the two years after his discharge * * * earning only approximately $800 during that period." *Id.* at ¶ 10, 828 N.E.2d 97. We do not agree with the broad interpretation of *Eckerly*, urged upon us by the commission, that any period of subsequent unemployment would prevent any possibility of a claim for TTD compensation involving the original employer.

*Id.* at ¶ 14-17.

{¶ 73} The *Cline* case and its clarification of *Eckerly* was followed by this court in *State ex rel. MedAmerica Health Sys. Corp. v. Brammer*, 10th Dist. No. 11AP-904, 2012-Ohio-4416.

{¶ 74} In the *MedAmerica* case, in May 2008, the claimant, Sherry Brammer, injured her right shoulder while employed with MedAmerica.  By fall 2008, Brammer's treating physician released her to return to work without restrictions.  Medical records, as

well as Brammer's testimony, indicated that, after she returned to work without restrictions, her shoulder symptoms increased. Brammer requested surgery to repair her rotator cuff in February 2009, but MedAmerica denied the request. In March 2009, MedAmerica terminated Brammer for excessive absenteeism. Brammer later testified that the majority of her absences were due to progressing shoulder pain. Brammer received unemployment compensation following her job termination.

{¶ 75} In November 2009, Brammer began working for TelePerformance at a sedentary position. While working for TelePerformance, Brammer began experiencing an increase in her pre-existing low back condition—a non-allowed condition. Following advice from her treating physician to discontinue her work with TelePerformance, Brammer did so in February 2010. Brammer then applied for and received unemployment compensation.

{¶ 76} On June 7, 2010, Brammer underwent right shoulder surgery which was approved by MedAmerica. MedAmerica also began payments of TTD compensation beginning the date of the surgery.

{¶ 77} In October 2010, MedAmerica moved to retroactively terminate Brammer's TTD compensation and to declare an overpayment beginning June 7, 2010 on grounds that Brammer was disabled due to an unrelated medical condition and not working prior to the surgery.

{¶ 78} Ultimately, a commission deputy denied MedAmerica's motion. The deputy found that Brammer did not voluntarily abandon her former position of employment at MedAmerica, did not abandon the entire workforce, and did not voluntarily abandon her last employment with TelePerformance. The deputy's findings were approved by the three-member commission. Then, MedAmerica filed a mandamus action in this court.

{¶ 79} Upholding the commission's decision, this court, in *MedAmerica*, explains:

> In its first objection, relator argues that the magistrate's decision was contrary to the Supreme Court of Ohio's decision in *State ex rel. Eckerly v. Indus. Comm.*, 105 Ohio St.3d 428, 2005-Ohio-2587. Relator points to the court's statement in *Eckerly* that the key aspect in all TTD cases is that the industrial injury must remove the claimant from his or her job, and this requirement cannot be satisfied if the claimant had no job at the time of the alleged disability. Pursuant to *Eckerly*, relator asserts, claimant in this case

was not eligible for TTD at the time of her surgery in June 2010 because she was unemployed for reasons unrelated to her claim; that is, she was unemployed based upon her voluntary decision to leave her employment with TelePerformance due to her non-allowed back condition.

However, *Eckerly* is distinguishable in several respects. In *Eckerly*, the worker was permitted to return to his former position of employment with no restrictions but then voluntarily abandoned his former position when he was fired for unexcused absenteeism. He subsequently voluntarily abandoned the entire workforce. In the present case, claimant did not voluntarily leave her former position of employment with relator; rather, she was terminated for reasons related to the allowed conditions in her claim. Although she was terminated from her job with relator for absenteeism while working light duty under the restrictions defined in her industrial claim, she testified that most of the absences were due to her industrial injury, which was corroborated by her doctor, Michael Herbenick, M.D., and the finding by the Ohio Department of Job and Family Services that she was entitled to unemployment benefits because her discharge was without cause. Thus, her departure from her employment with relator was involuntary, unlike the employee's voluntary abandonment in *Eckerly*.

In addition, *Eckerly* clearly does not stand for the proposition that TTD is precluded when a worker involuntarily abandons her former position of employment but then voluntarily departs a subsequent position of employment with another employer, which is the case here. To the contrary, as we recently found in *State ex rel. Cline v. Abke Trucking, Inc.*, 10th Dist. No. 10AP-888, 2012-Ohio-1914, ¶ 14-15, a voluntary abandonment of subsequent employment does not relate back and transform an involuntary departure from the original employer into a voluntary departure so as to render the employee ineligible for TTD compensation. *Id.* at ¶ 15.

Furthermore, the present case is distinguishable from *Eckerly* in that claimant in the present case did not abandon the entire workforce. Claimant here attempted to work for a subsequent employer within her work restrictions but could not continue because of a non-allowed back injury, and there is no evidence that she intended to abandon the entire workforce at this point. *See Cline* at ¶ 14-15 (that the

claimant, after involuntarily abandoning employment with his original employer, voluntarily abandoned his employment with his subsequent employer does not demonstrate abandonment of or an intent to leave the entire workforce). No cases addressing complete abandonment of the workforce by a claimant do so in terms of treating a voluntary departure from a subsequent employer as a TTD-preclusive event. *Id.* at ¶ 15. This differs from a voluntary departure from the employer against whom the claim is brought. *Id.*

We also note that, in *Cline*, we rejected the same broad interpretation urged by relator here that *Eckerly* stands for the proposition that no claim for TTD can be allowed if the claimant is unemployed at the time of the alleged disability. We found in *Cline* that the decision in *Eckerly* did not turn on the momentary unemployment of the claimant but, rather, the claimant's complete abandonment of the workforce. We rejected the interpretation that any period of subsequent unemployment would prevent any possibility of a claim for TTD compensation involving the original employer. *Cline* at ¶ 17. For these reasons, we find *Eckerly* inapplicable to the current case. Relator's first objection is without merit.

*Id.* at ¶3-7.

{¶ 80} This court's decisions in *Cline* and *MedAmerica* compel the issuance of a writ of mandamus in the instant case.

{¶ 81} Here, ABM has never claimed that relator voluntarily abandoned his former position of employment, and that on that basis, he was rendered ineligible for TTD compensation under the rationale of *Louisiana-Pacific*. We actually know very little from the record regarding the circumstances of relator's departure from his employment with ABM.

{¶ 82} In the "Statement of Facts" in ABM's brief, we are simply told "[f]ollowing the date of injury, Relator left his employment with ABM." (Respondent ABM's brief, at 5.) In its March 1, 2011 letter to the Self-Insured Complaint Resolution Unit, ABM states simply: "Mr. Montanez was terminated from his employment at ABM on August 30, 2006 for reasons unrelated to his injury in this claim. He continued to work at Almost Family."

{¶ 83} At the time ABM filed its June 9, 2010 motion for termination of TTD compensation, ABM did not allege a voluntary abandonment of employment at ABM. We

do not know why ABM did not allege a voluntary abandonment of employment at ABM. However, we do know that, as of June 9, 2010, relator continued to be employed at Almost*family*. Presumably, under *McCoy*, an allegation of a voluntary abandonment of employment at ABM could not produce a finding of TTD ineligibility as long as relator was employed at Almost*family*. However, even after ABM discovered that relator had been fired from his position at Almost*family*, ABM never alleged a voluntary abandonment of employment from the former position of employment at ABM. The focus of ABM's claim at the July 15, 2010 hearing was the alleged involuntary abandonment of employment at Almost*family*. Again, ABM has never alleged that relator's termination from his employment at ABM was voluntary under *Louisiana-Pacific* or any other rationale, even when the firing at Almost*family* became known to ABM at the July 15, 2010 hearing.

{¶ 84} Given the above-described scenario, ABM's claim that relator was ineligible for TTD compensation rested entirely on its allegation that relator had voluntarily abandoned his employment at Almost*family* which was not the job of injury. Moreover, there is no evidence in the record that ABM alleged workforce abandonment at the series of hearings beginning with the July 15, 2010 DHO hearing through the May 24, 2011 hearing before the commission itself. None of the commission orders address workforce abandonment or indicate that ABM was pursuing a finding of workforce abandonment.

{¶ 85} Clearly, as the *Cline* and *MedAmerica* cases indicate, a commission finding of workforce abandonment cannot be premised solely upon a finding that the claimant voluntarily abandoned a job with another employer subsequent to his departure from the job of injury. Moreover, as this court states in *Cline*:

> In the necessarily fact-intensive inquiry into whether a claimant has abandoned the work force entirely, we do not conclude that *repeated and habitual* firings from subsequent employment might be taken into account, but again, that is not the case before us.

(Emphasis sic.) *Id.* at ¶ 16.

{¶ 86} Moreover, relator's shoulder surgery, which is the basis of his TTD claim, occurred only three-to-four months after his October 22, 2009 departure from employment at Almost*family*. We do not know whether relator looked for work during

that time.   In any event, workforce abandonment was never put in issue before the commission by ABM.

{¶ 87} Based upon the above analysis, it is clear that the commission abused its discretion in holding that relator is ineligible for TTD compensation during the period at issue, i.e., from February 3 to September 3, 2010.

{¶ 88} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its May 24, 2011 order to the extent that it grants ABM's June 9, 2010 motion to terminate TTD compensation, finds that relator voluntarily abandoned his employment when he was discharged by Almost*family*, declares an overpayment of TTD compensation from February 3 to September 3, 2010, and orders recoupment of the overpayment.  The writ further orders that the commission enter an amended order that denies ABM's June 9, 2010 motion (as written and as orally amended) and reinstates the payments of TTD compensation pursuant to ABM's agreement as stated in the March 17, 2010 letter of ABM's third-party administrator.


                                        */S/* MAGISTRATE
                                        KENNETH W. MACKE


                           **NOTICE TO THE PARTIES**

        Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign
        as error on appeal the court's adoption of any factual finding
        or legal conclusion, whether or not specifically designated as
        a finding of fact or conclusion of law under Civ.R.
        53(D)(3)(a)(ii), unless the party timely and specifically
        objects to that factual finding or legal conclusion as required
        by Civ.R. 53(D)(3)(b).