[Cite as *State ex rel. Yuravak v. Indus. Comm.*, 2016-Ohio-8343.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel.<br>Deborah Yuravak, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 16AP-45 |
| | : | |
| The Industrial Commission of Ohio<br>and Fairview Hospital Cleveland Clinic, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 22, 2016

**On brief:** *Shapiro, Marnecheck & Palnik, Matthew A. Palnik*, and *Elizabeth M. Laporte*, for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Natalie J. Tackett*, for respondent Industrial Commission of Ohio.

**On brief:** *Gottfried Sommers LLC, R. Mark Gottfried*, and *Sandra B. Sommers,* for respondent Fairview Hospital Cleveland Clinic.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, P.J.

{¶ 1} Relator, Deborah Yuravak, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders[1] which denied her application for temporary total

---

[1] On April 11, 2014, a district hearing officer ("DHO") held a hearing on temporary total disability ('TTD') compensation. The decision to deny the compensation was typed April 14 and mailed April 16, 2014. On June 2, 2014, a staff hearing officer ("SHO") held a hearing on the appeal of the April 16, 2014 order. The decision to vacate the April 16, 2014 DHO order, but still deny TTD compensation, was typed June 2 and

disability ("TTD") compensation, denied continuing jurisdiction, and refused appeal. Relator requests this court order the commission to find that she is entitled to TTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny relator's request for a writ of mandamus, finding that the commission did not abuse its discretion when it denied relator's application for TTD compensation.

{¶ 3} Relator has filed the following three objections to the magistrate's decision:

[I.] The Magistrate erred in holding that it is automatically workforce abandonment when one is not working at the exact time they first request temporary total disability when all evidence supports that the reason for not working is injury-related.

[II.] The Magistrate erred by ignoring intent and holding that when there is not enough evidence to support granting temporary total disability it automatically equates to workforce abandonment when all evidence in the record supports the conclusion that Relator's resignation was injury related.

[III.] The Magistrate failed to address issue pled in Relator's Complaint and briefed in her Merit Brief of the Industrial Commission's refusal to exercise continuing jurisdiction on the basis of mistake of fact, mistake of law and new and changed circumstances.

{¶ 4} We begin by addressing the third objection. Relator contends the magistrate did not address the commission's refusal to exercise continuing jurisdiction. In her merit brief in support of mandamus, relator specifically argued that the commission abused its discretion on August 13, 2015 when the staff hearing officer ("SHO") refused to exercise continuing jurisdiction on the mistake of law, mistake of fact, and new and changed

mailed June 5, 2014. On June 20, 2014, another SHO reviewed an appeal of the June 5, 2014 SHO order. The decision to refuse appeal was typed June 20 and mailed June 25, 2014. On June 15, 2015, a DHO held a hearing on the request for TTD compensation and continuing jurisdiction. The decision to deny the compensation and continuing jurisdiction was typed June 16 and mailed June 18, 2015. On August 5, 2015, an SHO held a hearing on the appeal of the DHO's June 18, 2015 order. The decision to modify the DHO's order and still deny compensation and continuing jurisdiction was typed August 6 and mailed August 13, 2015. On August 28, 2015, another SHO reviewed an appeal of the SHO's August 13, 2015 order. The decision to refuse appeal was typed August 28 and mailed September 1, 2015. We refer to these orders pursuant to the date that they were mailed.

circumstances regarding the June 5, 2014 commission finding that relator had voluntarily abandoned the workforce so as to preclude the payment of TTD. Relator alleged the commission committed mistakes of law and fact when it misapplied both *State ex rel. Eckerly v. Indus. Comm.*, 105 Ohio St.3d 428, 2005-Ohio-2587, and *State ex rel. Hoffman v. Rexam Beverage Can Co.*, 137 Ohio St.3d 129, 2013-Ohio-4538, and by imposing a burden of proof on relator that this court has held impermissible. Relator further alleged that there existed new and changed circumstances in the form of: (1) the July 2, 2014 MRI, and (2) the subsequent third cervical surgery, both of which corroborate relator's persistent worsening cervical complaints. Finally, she argued that new and changed circumstances existed in the form of her August 19, 2013 resignation letter as this was newly discoverable evidence since it was not raised at either the district hearing officer ("DHO") or SHO hearings. Relator claimed she was not able to obtain the resignation letter, even though she wrote it. Relator also claimed that the January 6, 2015 letter from Rick Di Domenico, former executive director of Life Care Center of Medina, is new evidence of relator's intent on her resignation. It appears the magistrate did not address the refusal to exercise continuing jurisdiction. Therefore, we will address the same now.

{¶ 5} On June 18, 2015, the DHO considered relator's request for continuing jurisdiction regarding the June 5, 2014 SHO order and denied the same, finding that relator's resignation letter was not evidence of new and changed circumstances. The DHO also determined there was no evidence the Di Domenico letter could not have been obtained or was not discoverable for the SHO hearing on June 2, 2014. There is no indication in the DHO's order that the July 2, 2014 MRI and evidence of the third cervical surgery were presented to the DHO. Furthermore, there is no indication that relator raised any legal arguments that *Eckerly* or *Hoffman* were misapplied. A review of relator's April 28, 2015 C-86 motion to appeal confirms that neither the MRI, third cervical surgery, *Eckerly*, or *Hoffman* were raised by relator.

{¶ 6} On August 13, 2015, the SHO modified the prior DHO's June 18, 2015 order but still denied the request for continuing jurisdiction. First, the SHO noted that no evidence was presented regarding a mistake of fact. The SHO addressed relator's mistake of law argument that the prior SHO did not have jurisdiction to sua sponte raise the issue of voluntary abandonment. The SHO disagreed and noted that the transcript from the

April 11, 2014 DHO hearing reflects the circumstances surrounding relator's resignation were discussed and, furthermore, had it not been discussed, the prior SHO was permitted to conduct a de novo hearing. Furthermore, once again, there is no indication that relator raised any legal arguments that *Eckerly* or *Hoffman* were misapplied.

{¶ 7} The SHO then addressed relator's new evidence argument and stated that the resignation letter could not be considered new evidence as it was in existence prior to the June 5, 2014 SHO order. The SHO also found that relator had "not established [the Di Domenico letter] could not have been obtained prior to the 2014 administrative adjudications regarding the payment of temporary total compensation." (Stip. of Evid. at 268.) We note, once again, there is no indication in the August 13, 2015 SHO order that the July 2, 2014 MRI and evidence of the third cervical surgery were even presented to the SHO. Review of the July 7, 2015 online appeal reveals a notation that "[a]dditional evidence will NOT be submitted" and thus confirms that relator did not submit additional evidence in the form of the MRI or third cervical surgery. (Emphasis sic.) (Stip. of Evid. at 265.)

{¶ 8} Finally, on September 1, 2015, the commission refused relator's appeal of the SHO's August 13, 2015 order. Review of the August 26, 2015 online appeal contained in the record reveals a notation "additional evidence will NOT be submitted" and thus confirms that relator did not submit additional evidence in the form of the MRI or third cervical surgery. (Emphasis sic.) (Stip. of Evid. at 273.) Again, there is nothing in the record to indicate that relator raised the legal arguments regarding *Eckerly* or *Hoffman*.

{¶ 9} Taking all this into consideration, we agree that relator's letter and the Di Domenico letter are not new evidence or previously not obtainable. We find the commission did not abuse its discretion in denying continuing jurisdiction. The third objection is overruled.

{¶ 10} Regarding relator's first and second objections, relator essentially argues the magistrate confused the standard for denying TTD with the standard for finding workforce abandonment. Relator argues that the burden for proving workforce abandonment lies with the employer and that she, as the employee, was not required to: (1) be working at the time of her disability, and (2) present contemporaneous medical evidence of disability at the time of her resignation. Rather, relator argues the magistrate erred by not focusing on evidence of relator's intent at the time of her resignation, in

particular: (1) the fact that her resignation letter indicates she is resigning for "medical reasons" rather than retiring, and (2) the subsequent MRI and third cervical surgery.

{¶ 11} *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44 (1988), held that where a claimant's retirement is causally related to his injury, the retirement is not "voluntary" so as to preclude eligibility for TTD, however, "[w]here * * * the Industrial Commission determines that a claimant has not left a former position of employment due to a work-related injury, it may properly deny an award of temporary total disability." *Id.* at 46. The commission's determination regarding whether retirement was "voluntary" will be upheld if there is some evidence to support it.

{¶ 12} In support of her argument, relator points to our decision in *State ex rel. Montanez v. ABM Janitorial Servs.*, 10th Dist. No. 12AP-364, 2013-Ohio-4333. However, in *Montanez*, as well as *State ex rel. Cline v. Abke Trucking, Inc.*, 10th Dist. No. 10AP-888, 2012-Ohio-1914, and *State ex rel. MedAmerica Health Sys. Corp. v. Brammer*, 10th Dist. No. 11AP-904, 2012-Ohio-4416, on which *Montanez* relied, the relator's voluntary abandonment took place after an involuntary abandonment, and the court held " 'a voluntary abandonment of subsequent employment does not relate back and transform an involuntary departure from the original employer into a voluntary departure so as to render the employee ineligible for TTD compensation.' " *Montanez* at ¶ 10, quoting *MedAmerica* at ¶ 5-7 and *Cline* at ¶ 14-15. That is not the case here.

{¶ 13} As pointed out by the magistrate, the voluntary nature of any claimant's departure from the workforce or abandonment is a factual question which centers around the claimant's intent at the time of retirement and all relevant circumstances must be considered in determining the same. In *Hoffman*, the Supreme Court of Ohio stated that relevant factors include "evidence of the claimant's medical condition at or near the time of departure from the workforce, if submitted, and any other evidence that would substantiate a connection between the injury and retirement." *Id.* at ¶ 15. In the June 5, 2014 SHO decision, the commission considered the following relevant information in determining relator's resignation was voluntary: (1) the fact that relator had a sedentary position upon her return from a 2008 surgical procedure until her resignation November 8, 2013, (2) the fact that it was her own personal assessment that she could not continue to work, (3) the fact that despite testifying to excruciating levels of pain, relator did not seek any medical treatment until January 2, 2014, almost two months after her

resignation, (4) the lack of any medical evidence indicating she was incapable of working to confirm her allegation that she was not physically capable of continuing in her sedentary job upon the date of her resignation, and (5) the fact that relator had not looked for any work since her resignation.

{¶ 14} Accordingly, we cannot say that the commission abused its discretion in finding that relator voluntary abandoned the workforce. Therefore, the first and second objections are overruled.

{¶ 15} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's three objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule the three objections to the magistrate's decision and adopt the magistrate's decision as modified by this decision. Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled;*
*writ of mandamus denied.*

TYACK and BROWN, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Deborah Yuravak, | : | |
| Relator, | : | |
| v. | : | No. 16AP-45 |
| The Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Fairview Hospital [dba] The Cleveland Clinic, | : | |
| | : | |
| Respondents. | : | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

**Rendered on July 29, 2016**

*Shapiro, Marnecheck & Palnick, Matthew A. Palnik,* **and** *Elizabeth M. Laporte,* **for relator.**

*Michael DeWine,* **Attorney General, and** *Natalie J. Tackett,* **for respondent Industrial Commission of Ohio.**

*Gottfried Sommers LLC, R. Mark Gottfried,* **and** *Sandra B. Sommers,* **for respondent Fairview Hospital dba The Cleveland Clinic.**

### IN MANDAMUS

{¶ 16} Relator, Deborah Yuravak, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied her application for temporary total disability ("TTD") compensation, and ordering the commission to find that she is entitled

to that compensation.  Relator also asks this court to issue a writ of mandamus ordering the commission to grant her motion for continuing jurisdiction, reconsider the issue of voluntary abandonment, and find in her favor.

Findings of Fact:

{¶ 17} 1. Relator sustained a work-related injury on January 10, 1997 while working as a file clerk/forms coordinator for respondent, Fairview Hospital dba The Cleveland Clinic ("Fairview"), a self-insured employer.

{¶ 18} 2.  Fairview initially certified relator's claim for cervical strain and herniated disc C5-6.

{¶ 19} 3. On November 30, 1998, relator underwent an interior C5 discectomy with posterior decompression and interbody fusion, underwent physical therapy, and was ultimately able to return to work approximately six months later.

{¶ 20} 4.  Relator voluntarily left Fairview in September 1999 and took a job at Life Care Center of Medina ("Life Care") as a receptionist, and ultimately became the office manager.  Relator acknowledged that, while still employed at Fairview, another employee was assigned to perform any lifting tasks for her.  According to her testimony, she left Fairview because she was in a lot of pain, the employee assigned to assist her harassed her, and the job at Life Care was within walking distance of her home.

{¶ 21} 5. In 2004, relator's claim was additionally allowed for:  "spondylogenic compression at C5-6 and C4-5; disc bulge without myelopathy."

{¶ 22} 6. On March 7, 2008, relator had a second surgery to re-explore the "anterior cervical fusion * * * done at the C5-6 level and * * * a C4-5 anterior cervical decompression with fusion."

{¶ 23} 7. Relator received TTD compensation following this second surgery until she returned to work at Life Care in June 2008.

{¶ 24} 8.  Relator indicated that she was essentially pain free until March 2009.

{¶ 25} 9.  In 2010, relator's claim was additionally allowed for disc herniation C3-4 and C6-7 as flow-through conditions.

{¶ 26} 10.  Relator was treated by Cyril E. Marshall, M.D., on December 13, 2012, because she was experiencing a lot of neck pain and headaches, and she indicated that her neck pops and cracks.  At that time, Dr. Marshall noted that relator's range of motion of

her cervical spine was decreased by 50 percent. Dr. Marshall prescribed Vicodin and Flexeril and completed a C-9 form requesting massage therapy.

{¶ 27} 11. In a letter dated August 19, 2013, relator notified her employer that she found it necessary to resign from her position. In that letter, relator explained:

> I am writing this letter with deepest sadness. At this time I feel it necessary to resign from my position as Business Office Manager with Life Care Center of Medina, due to medical reasons. I feel it is in the best interest for the company and myself. My last day of employment will be September 18, 2013.

{¶ 28} 12. Relator did not resign on September 18, 2013 as she had indicated in her letter because her employer had not yet found a replacement. Relator's last day of work at Life Care was November 8, 2013.

{¶ 29} 13. Relator did not seek medical attention until January 2, 2014 when she returned to Dr. Marshall. In his office note of the same date, Dr. Marshall noted that relator was having a lot of neck pain and that she felt like she was getting worse. Dr. Marshall noted that relator had a 50 percent decrease in range of motion of her cervical spine and tenderness in the paraspinals.

{¶ 30} 14. That same day, Dr. Marshall completed a Medco-14 Physician's Report of Work Ability indicating that relator was temporarily not released to any work including her former position of employment from January 2 through April 1, 2014. He noted as his clinical findings that relator had a 50 percent decrease in cervical range of motion, worsening pain which he indicated was an 8 out of 10, and further noted that they were awaiting approval for a cervical spine MRI.

{¶ 31} 15. Dr. Marshall authored a letter to relator's counsel explaining her situation further:

> She has been suffering with progressive pain in her neck. She has been unable to work since 11-8-13 due to the severity of neck pain with marked restriction in cervical range of motion. I have ordered updated cervical MRI. Based on exam today, she is disabled as a direct result of the cervical spine conditions. She is in horrible pain with only 50% retained cervical range of motion.

{¶ 32} 16. Relator filed her application for TTD compensation on January 6, 2014.

{¶ 33} 17. An independent medical evaluation was performed by Barry J. Greenberg, M.D. In his February 26, 2014 report, Dr. Greenberg listed the allowed conditions in relator's claim, identified the medical records which he reviewed, discussed the history of relator's conditions, and provided his physical findings upon examination. Dr. Greenberg opined that relator was voluntarily limiting her neck motion, concluded that her allowed conditions had reached maximum medical improvement ("MMI"), and concluded that she was not temporarily and totally disabled, instead noting that she had decided to stop working because of continuing neck pain and restricted motion which, as he noted, were not new issues.

{¶ 34} 18. Relator's application was heard before a district hearing officer ("DHO") on April 11, 2014. The DHO relied on the report of Dr. Greenberg to conclude that relator was not entitled to an award of TTD compensation.

{¶ 35} 19. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on June 2, 2014. The SHO vacated the prior DHO order and denied relator's request for TTD compensation finding that she had voluntarily abandoned her employment when she left work on November 8, 2013. The SHO explained that relator had failed to provide any contemporaneous evidence relative to the date she quit work which would indicate that she was medically incapable of working. The SHO noted further that relator did not look for any work after leaving her employment in November 2013. Specifically, the SHO order provides:

> Ms. Yuravak left the Employer of Record in 1999 in order to take a job as an office manager for another employer. The Injured Worker has testified that the new job as an office manager entailed working on the computer all day and answering phones. The Injured Worker confirmed that this was a sedentary position. The Injured Worker indicated that she underwent a second surgical procedure in 2008 and was able to return to the sedentary position and continued to work until 11/08/2013.
>
> The Injured Worker testified that on 11/08/2013 she quit her sedentary job with the now Employer. The Injured Worker testified that it was her own personal assessment that she could not continue to work. The Injured Worker testified that she had gotten to the point where she wanted to commit suicide because the pain was so bad, so she went off work on 11/08/2013. However, despite describing excruciating level of pain, the Staff Hearing Officer notes that the Injured

Worker did not seek any medical treatment until 01/02/104 [sic].

The Staff Hearing Officer finds that the Injured Worker had not provided any medical evidence contemporaneous with the date she quit work, 11/08/2013, indicating that she was medically incapable of working to confirm her allegation that she was not physically capable of continuing in her sedentary job. Further, the Injured Worker has testified that it was her own assessment and that she did not have medical corroboration that she was unable to work as she did not seek treatment. Additionally, the Injured Worker has indicated that she has not looked for any work since leaving her employment on 11/08/2013.

As such, the Staff Hearing Officer finds that there is no medical evidence contemporaneous with Ms. Yuravak leaving work 11/08/2013 which indicates that she was unable to work due to the allowed conditions of this claim.

Accordingly, the Staff Hearing Officer finds that Ms. Yuravak has abandoned the workforce when she quit her job on 11/08/2013. According to State ex rel. Hoffman v Rexam Beverage Can Co. (2013) 137 Ohio St.3d 129, if an Injured Worker leaves the workforce for reasons unrelated to the industrial injury, there is no loss of earnings due to the injury and the Injured Worker is no longer eligible for temporary total compensation.

Despite the allegation of excruciating levels of pain, the Injured Worker did not seek treatment until 01/02/2014. She had already been off work for almost two months at that time for reasons unrelated to the claim. The Staff Hearing Officer also relies on State ex rel. Eckerly v. Industrial Commission (2005), 105 Ohio St.3d 428 which indicates the industrial injury must remove the Injured Worker from his or her job and this requirement cannot be satisfied if the Injured Worker did not have a job at the time they are alleging disability. The first evidence of disability related to the claim is not until 01/02/2014, well after the Injured Worker had already quit her job. Thus, there are no wages to replace and temporary total compensation is not payable.

It is the further order of the Staff Hearing Officer that the C-9 Request for Medical Service, dated 01/02/2014, is denied.

{¶ 36} 20. Relator's further appeal was refused by order of the commission mailed June 25, 2014.

{¶ 37} 21. On September 19, 2014, relator filed a C-86 motion requesting the approval of surgery and asking that TTD compensation be paid from the date of that surgery, September 19, 2014.

{¶ 38} 22. Relator's C-86 motion was heard before a DHO on November 14, 2014 and was denied based on the prior SHO order determining that relator had voluntarily abandoned her employment.

{¶ 39} 23. Relator appealed; however, she later withdrew that appeal.

{¶ 40} 24. On April 29, 2015, relator filed a motion asking that the commission exercise its continuing jurisdiction alleging a mistake of fact, a mistake of law, and that new evidence which was not available at the time of the June 2, 2014 SHO hearing was now available.

{¶ 41} 25. On June 15, 2015, relator's request was heard before a DHO and was denied. In support of her motion, relator had submitted a copy of her August 2013 letter of resignation as support for new and changed circumstances. The DHO noted that letter was authored prior to the SHO hearing on June 2, 2014 and did not constitute evidence of new and changed circumstances.

{¶ 42} Relator had also submitted a letter from the former executive director of Life Care dated January 6, 2015 wherein he explained that relator had complained of constant neck pain and that her resignation was due to her neck pain. The DHO determined that relator failed to establish that this letter could not have been obtained or was not discoverable to be submitted in time for the June 2014 SHO hearing. Finding that relator failed to present any evidence of a mistake of fact or law in the June 2, 2014 SHO order, the DHO denied relator's request for relief pursuant to R.C. 4123.52.

{¶ 43} 26. Relator appealed and the matter was heard before an SHO on August 5, 2015. The SHO also denied relator's request for relief pursuant to R.C. 4123.52, but for different reasons. The SHO noted that, at the June 2, 2014 hearing, there was no contemporaneous medical evidence relative to the time when relator left the workforce and the prior finding that relator left the workforce for reasons unrelated to the industrial injury did not constitute a mistake of fact.

{¶ 44} Relator had alleged that the original SHO did not have jurisdiction to raise the issue of voluntary abandonment arguing that her employer had failed to raise it. However, the SHO disagreed relying in part on the transcript from the DHO hearing held April 11, 2014. As the SHO noted, the circumstances surrounding relator's resignation were in fact discussed. Regardless, the prior SHO was not precluded from addressing any legal defense to an issue noticed for hearing as each administrative level of adjudication represents a de novo hearing on the merits.

{¶ 45} The SHO also found that relator's letter of resignation and the letter from the executive director did not constitute evidence which could not have been presented at the 2014 hearing. As such, the SHO determined that relator failed to provide evidence to substantiate the invocation of the extraordinary remedy of continuing jurisdiction.

{¶ 46} 27. Relator's further appeal was refused by order of the commission mailed November 1, 2015.

{¶ 47} 28. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 48} Relator argues that the commission abused its discretion in the following manner: (1) unilaterally raising the affirmative defense of voluntarily abandonment of the workforce when the self-insured employer did not; (2) misapplying *State ex rel. Hoffman v. Rexam Beverage Can Co.,* 137 Ohio St.3d 129, 2013-Ohio-4538 and *State ex rel. Eckerly v. Indus. Comm.,* 105 Ohio St.3d 428, 2005-Ohio-2587, which deal with voluntary abandonment compared with the commission's finding of workforce abandonment; and (3) finding a workforce abandonment where there are no facts to suggest that relator's inability to work is anything other than related to the allowed conditions in her claim.

{¶ 49} The magistrate finds that the commission did not abuse its discretion: (1) relator's absence from the workforce was an issue and the commission did not abuse its discretion by discussing the issue; (2) the SHO did not apply rationale from *Hoffman* and *Eckerly;* and (3) the commission did not abuse its discretion by finding that relator failed to establish that she left the workforce due to the allowed conditions in her claim.

{¶ 50} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act

requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 51} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 52} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 53} Where an employee's own actions, for reasons unrelated to the injury, preclude him or her from returning to their former position of employment, he or she is not entitled to TTD benefits, since it is the employee's own actions, rather than the injury, that precludes return to the former position of employment. *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.*, 29 Ohio App.3d 145 (1985).

{¶ 54} When demonstrating whether an injury qualifies for TTD compensation, a two-part test is used. The first part of the test focuses on the disabling aspects of the injury. The second part of the test determines if there are any factors, other than the injury, which would prevent claimant from returning to his or her former position of

employment. *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42 (1987). However, only a voluntary abandonment precludes the payment of TTD compensation. *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44 (1988). As such, voluntary abandonment of a former position of employment can, in some instances, bar eligibility for TTD compensation.

{¶ 55} The voluntary nature of any claimant's departure from the workforce or abandonment is a factual question which centers around the claimant's intent at the time of retirement. In *State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.*, 45 Ohio St.3d 381 (1989), the Supreme Court stated that consideration must be given to all relevant circumstances existing at the time of the alleged abandonment. Further, the court stated that the determination of such intent is a factual question which must be determined by the commission.

{¶ 56} If it is determined that a claimant's retirement from a job was voluntary, TTD compensation can be awarded only if the claimant has re-entered the workforce and, due to the allowed conditions from the industrial injury, becomes temporarily and totally disabled while working at the new job. *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305. However, a claimant's complete abandonment of the entire workforce precludes the payment of TTD compensation all together. *Jones* and *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376 (2000).

{¶ 57} Relator first asserts that the commission abused its discretion by unilaterally raising the affirmative defense of voluntary abandonment when the employer had not done so. For the reasons that follow, the magistrate disagrees.

{¶ 58} First, it must be remembered that the burden of proof is always on the claimant to establish entitlement to an award of compensation. All claimants, including relator herein, are required to present medical evidence sufficient to establish entitlement to an award. In order to be entitled to an award of TTD compensation, relator was required to demonstrate that she had sustained a loss of earnings as a result of the allowed conditions in her claim. Here, relator sought an award of TTD compensation beginning November 8, 2013, the date she last worked. Relator was required to present sufficient medical evidence that, at that time, her allowed conditions rendered her incapable of working. In her letter of resignation, dated August 19, 2013, relator indicated that she found it necessary to resign from her position "due to medical reasons."

However, relator did not seek medical treatment for almost five months     In early 2013, relator sought an increase in her award of permanent partial disability compensation. Jess G. Bond, M.D., examined her in January 2013 and Catherine Campbell, M.D., examined her in March 2013. Relator complained to both physicians that she still had considerable neck pain rated at a level 7 to 8 out of 10, and that injury to her neck severely affected her ability to do everything. However, relator never specifically indicated that her sedentary job was more difficult due to this pain. Based on these reports, the commission determined that relator had a 36 percent permanent partial disability, an increase of 1 percent. While the medical reports upon which the commission relied indicated that relator had significant impairments, at no time did either report indicate that relator was unable to work, and relator did not inform them that she was having increased difficulties working.

{¶ 59} As indicated in the findings of fact, there was a 13-month gap between relator's treatment with Dr. Marshall on December 13, 2012 and subsequent treatment on January 2, 2014, after her resignation. Relator simply did not seek any medical treatment during this time period. In the transcript, relator provided two explanations for her failure to see Dr. Marshall sooner: (1) the employer objected to every doctor visit, and (2) she hoped that when she left work in November 2013, her symptoms would decrease. That is the explanation relator provided for not providing any contemporaneous medical evidence that her allowed conditions forced her to leave her sedentary position at Life Care. The commission could have relied on her explanation, but did not.

{¶ 60} Based on this lack of medical evidence to support her assertion that she was not working due to the allowed conditions in her claim, the SHO concluded that relator failed to establish that the allowed conditions in her claim removed her from her job, and she had no wages to replace. The magistrate finds that this was not an abuse of discretion.

{¶ 61} Relator also takes issue with the commission's finding that she "voluntarily abandoned the workforce." Relator asserts that the commission's reliance on *Eckerly* and *Hoffman* is misplaced because those cases dealt with voluntary abandonment and not workforce abandonment. Relator asserts that *Eckerly* is inapplicable because that case involved the claimant's voluntary abandonment from his former position of employment after being terminated for cause. Finding that the claimant had not re-entered the

workforce, he was denied TTD compensation. Relator argues that neither this court nor the Supreme Court of Ohio ever stated that Mr. Eckerly had abandoned the workforce.

{¶ 62} Relator's characterization of the holding from *Eckerly* is inaccurate. Mr. Eckerly was terminated from his job and made no attempts to re-enter the workforce. As such, the commission found that he was not entitled to an award of TTD compensation. When a claimant is not working for reasons unrelated to the allowed conditions in the claim, the departure is considered voluntary. Whenever a claimant declines to re-enter the workforce, it can be said that, for all intents and purposes, they have abandoned the workforce.

{¶ 63} Relator also asserts that the commission abused its discretion by citing to the *Hoffman* decision. In that case, approximately three months after Mr. Hoffman's TTD compensation was terminated, he retired based on years of service. Sixteen months later, Mr. Hoffman required a second knee surgery and applied for TTD compensation. The commission denied that request finding that Mr. Hoffman had voluntarily abandoned the workforce and cited his employment records, which indicated that his retirement was based on years of service, medical reports that he had reached MMI, his receipt of Social Security Disability benefits, and his testimony that he had applied for only one job in the month since his retirement. Relator says that her situation is different because she had never been determined to have reached MMI and she has never applied for Social Security Disability benefits.

{¶ 64} The magistrate disagrees. Relator is directing attention to certain specific facts which differentiate *Eckerly* from *Hoffman*; however, those differences do not change the law. As stated previously, when an injured worker is not working for reasons unrelated to the allowed conditions in the injured worker's claim, the injured worker's departure from not only their previous position of employment, but the entire workforce, is considered voluntary. In the present case, the commission found that relator failed to establish that her departure from the workforce in November 2013 was related to the allowed conditions in her claim. As such, the commission found that her departure from her job with Life Care was voluntary. Because relator never re-entered the workforce or even attempted to re-enter the workforce, the commission was entitled to find that she did not meet her burden of proof and instead the facts, at that point in time, led to the conclusion that she had voluntarily abandoned the workforce.

{¶ 65} Finding that the commission did not abuse its discretion when it denied relator's application for TTD compensation, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).